BILLY RAY RILEY, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 21240

March 28, 1991                          808 P.2d 560

*Morgan D. Harris,* Public Defender and *Stephen J. Dahl,*
Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex
Bell,* District Attorney and *William T. Koot,* Deputy District
Attorney, Clark County, for Respondent.

## OPINION

By the Court, Rose, J.:

This case involves the conviction of Billy Ray Riley for first
degree murder with use of a deadly weapon and a sentence of
death. The issue at hand is whether this court should impose
sanctions against Riley's attorney, Deputy Public Defender
Stephen J. Dahl, for failing to comply with the briefing schedule.
We conclude that sanctions should not be imposed.

On July 25, 1990, this court entered an order setting forth a
briefing schedule in accordance with SCR 250(IV)(H). Pursuant
to that schedule, appellant's opening brief was due to be filed on
or before August 30, 1990. The order admonished counsel that,
pursuant to SCR 250(IV)(H), "sanctions may be imposed for

failure to comply with this schedule." On August 3, 1990, Dahl moved for reconsideration of the order of July 25, 1990, or, in the alternative, for leave to withdraw from defending Billy Ray Riley. On August 8, 1990, this court denied the motion, concluding that counsel did not lack the time, ability, resources and commitment to comply with the briefing schedule set forth in the prior order.

On August 30, 1990, Dahl moved for another extension of time within which to file the opening brief. On September 13, 1990, this court denied the motion and directed Dahl to file the opening brief within five working days. The brief was therefore due on or before September 20, 1990. On September 20, 1990, Dahl submitted a partial opening brief and a motion requesting a 30-day extension of time within which to file a completed opening brief. In support of the motion, he detailed the various steps which he and the Public Defender's Office had taken to complete the opening brief since entry of the order of July 25, 1990, setting forth the briefing schedule. These steps included the assignment of a deputy to assist Mr. Dahl in this appeal, the reorganization of the capital murder team, and Dahl's personal efforts to complete the brief after the deputy assisting him was interrupted in her efforts by her delivery of twins.

Mr. Dahl represented that during the 35-day period between August 13 and September 17, 1990, he worked a total of 22 days and spent almost 81 hours (44.7 percent of his time) working on the Riley appeal. The briefing was further delayed because Dahl spent 28.5 hours instituting a federal suit to enjoin the capital case guidelines promulgated by our court which require, among other things, strict briefing schedules. Dahl also contended that he had expected the appeal to be governed by "the old rules and practice" under which he had until September 19, 1990, before he was required to seek any extensions of time from this court. He further argued that SCR 250 does not apply to the Riley appeal, and that the Clark County Public Defender's Office had no notice that it would be governed by SCR 250. He indicated that because of this lack of notice, the Public Defender's Office had not commenced work on the appeal as of July 25, 1990, the date of this court's order setting a briefing schedule, and that this court's order shortened the time for preparation of the opening brief to 30 days.

On October 15, 1990, this court entered an order stating that Dahl had made a sufficient effort to comply with this court's prior orders. We returned the partial opening brief unfiled, and we granted Dahl 10 days to file the opening brief. On October 22, 1990, Dahl filed a third motion for an extension of time, stating that anticipating either a prompt response to the September 20

motion, or 30 days from an order granting the application, he ceased work on the opening brief in the instant case and devoted his efforts to working on other long-pending matters.

On November 5, 1990, this court entered an order granting Dahl until November 13, 1990, to file the opening brief. The order further gave Dahl 15 days to show cause why this court should not impose sanctions against him for his "dilatory conduct." Dahl filed a response on November 13, 1990, requesting that the one-signature order of November 5, 1990, be reconsidered by the entire court. He further submitted his affidavit setting forth reasons why he was not dilatory in the instant case, and why sanctions should not be imposed, noting that his motion of September 20, 1990, requested an extension of time *or,* in the event this court determined that he has not represented Riley adequately, for leave to withdraw from the case. Dahl stated that the latter request rendered uncertain his status as Riley's attorney pending this court's ruling on the request. Under these circumstances, Dahl felt he could not continue working on the opening brief at the expense of other important pressing matters, including a petition for rehearing, a reply brief, two death penalty hearings and various related motions, interviews with his clients at the Ely State Prison and a case involving the murder of an FBI agent. Dahl was unable to complete preparation of the opening brief within six days of October 19, 1990, the date on which he received this court's order of October 15, 1990.

Dahl had other important matters which had been put on hold and awaited his attention. As team chief of the capital murder team, he had many tasks, including the preparation of appeals and assisting other deputies with trial preparation and motions. Each team trial deputy has at least six death penalty cases at a time. There is no indication that Dahl purposely violated our briefing orders or could have complied by using due diligence. Dahl gave compelling reasons for the delays in this case, and there was no willful failure to comply with our briefing rules.

The dissenting opinion provides a list of cases to establish that the system is flawed. We agree that there have been unconscionable delays in many death penalty cases. However, the facts of those cases are distinctly different from the case at hand. Riley's notice of appeal was filed on April 16, 1990, and today, March 28, 1991, we issue our opinion affirming his conviction and death sentence. This court has done everything possible to prevent such delays, including the adoption of the death penalty case guidelines; and we do share the frustration expressed by the dissenting opinion relative to the inability to finalize the death penalty cases. However, the delays in processing death penalty cases occur far

more frequently and involve much more time in the federal court system than those generally encountered in Nevada courts.

We see no reason to conclude that because Dahl could not meet the strict briefing schedule, he is the sole and primary person at fault. Rather, it is more likely the fault of the system. The Public Defender should assign sufficient personnel to the appellate division to meet the briefing requirements of this court. And, if the Public Defender does not have an adequate number of attorneys, it is the county's obligation to provide them. It would be inappropriate to impose sanctions on a deputy public defender who has informed us of his problems and has caused no egregious delays. Therefore, we conclude that he was not dilatory in his professional duties in this matter, and sanctions will not be imposed.

SPRINGER and STEFFEN, JJ., concur.

YOUNG, J., with whom MOWBRAY, C. J., joins, dissenting:

I respectfully dissent. Nothing engenders more criticism of our judicial system than delays in processing capital cases. Fifty-eight inmates are on Nevada's death row. No person under capital sentence in Nevada has been executed involuntarily since 1961. Editorial comments mirror the frustration of our citizens. For instance, the Las Vegas Review-Journal on September 1, 1989, stated that "if the death penalty is to have any real deterrent effect, it should be carried out in a more timely fashion." Las Vegas Review-Journal, Sept. 1, 1989, at 10B, col. 1.

The Las Vegas Sun, on October 6, 1989, observed, "Plans to speed up appeals deserve our consideration." Las Vegas Sun, Oct. 6, 1989, at 6B, col. 1. The Reno Gazette Journal, on January 11, 1990, said, "Efforts to speed up death penalty cases are welcome. . . . The time has come to begin to change the system." Reno Gazette Journal, Jan. 11, 1990, at 9A, col. 1.

Appellant Riley, hardly a stranger to the criminal justice system, had four prior felony convictions. Before an eyewitness, he used a sawed-off shotgun to murder the victim while robbing him of drugs and money. Only a two-day trial was required for the guilt phase and one for the penalty phase. On March 20, 1990, appellant was sentenced to death pursuant to the jury verdict.

Our statutes provide for an automatic appeal in capital cases after judgment of conviction. Approximately four months later, no opening brief having been received, our court entered an order, on July 25, setting a briefing schedule. We directed that appellant's opening brief be filed by August 30, 1990. Counsel was admonished that "sanctions may be imposed for a failure to comply with this schedule."

The Clark County Public Defender, appellant's counsel, moved for reconsideration of the order of July 25, or, in the alternative, for leave to withdraw as counsel. Out court denied the motion on August 8, noting that we were not persuaded that the Clark County Public Defender's office lacked the time, ability, and resources to comply with the briefing schedule in the order.[1]

On the August 30 deadline, the Public Defender's office moved for more time to file the brief. Our court denied the motion for an extension on September 13 and directed counsel to file the opening brief before September 20.

On September 20, the Public Defender's office submitted a partial opening brief, together with still another motion for a thirty-day extension (to October 22) to file a completed opening brief. On October 15, our court entered an order implying that, while counsel's efforts were somewhat less than heroic, there had been some effort to comply with the briefing schedule and accordingly granted appellant until October 25, 1990 (nearly seven months after sentencing) to file the brief.

On October 22, appellant filed yet a third motion for an extension. In support thereof, the public defender described the effort to complete the opening brief after the September 20 motion (second motion for an extension):

> Anticipating either a prompt response to the application/ motion or thirty days from an order granting the application [counsel] ceased work on the opening brief in the instant case and devoted his efforts to working on other long-pending matters. . . .

Upon receiving this court's order of October 15, 1990, granting appellant three *more* days than requested, counsel, for some reason not clearly articulated, ceased working on the brief, and later discovered he was unable to complete the brief within the additional time allotted and sought more time.

On November 2, our court entered an order granting appellant more time—until November 13—within which to file an opening brief and also stated:

> Nevertheless, in light of this court's repeated admonitions throughout the history of this appeal concerning the expeditious completion of briefing, we conclude that counsel's performance demonstrates a lack of diligence in complying with the briefing schedule. Accordingly, counsel shall have

---

[1]During the year 1990, the Clark County Public Defender's office had an annual budget of approximately $4.5 million with an authorization for thirty-five attorneys.

fifteen (15) days from the date of this order within which to show cause why this court should not impose sanctions against counsel for counsel's dilatory conduct.

The public defender filed a response on November 13, 1990, asking that the one-signature order of November 2 be reconsidered by the entire court. Counsel also submitted an affidavit setting forth "reasons why counsel has not been dilatory in the instant case, and why sanctions should not be imposed." Specifically, counsel noted that his motion of September 20, 1990, requested an extension of time or, in the event this court determined that counsel had not represented appellant adequately, leave to withdraw from representation of appellant. Counsel stated, for reasons not set forth in his affidavit, that somehow this request rendered uncertain his status as appellant's attorney pending a ruling on the request.

Counsel reiterated, as detailed in the motion of September 20, 1990, the various steps taken after the July 25 order to expedite completion of the opening brief. These steps included assignment of a deputy to assist Mr. Dahl in this appeal, the reorganization of the capital murder team, and Mr. Dahl's personal efforts to complete the briefing after the deputy assisting him was interrupted by her delivery of twins.

Mr. Dahl indicated that, between August 13 and September 17, he worked twenty-two days on this appeal, including thirty minutes on one Saturday and sixty minutes on another. The briefing was further delayed because counsel spent twenty-eight and one-half hours instituting a federal suit to enjoin use of capital case guidelines promulgated by our court which require, among other things, strict briefing schedules.

The filing of appellant's opening brief on November 26, 1990, nearly eight months after the sentence of death was imposed, does not commend itself as a demonstration of diligence.[2]

---

[2]The Clark County Public Defender's lack of diligence in briefing this appeal is further demonstrated by the circumstances surrounding the filing of appellant's supplemental brief. Specifically, on February 28, 1991, twenty-one days after the completion of briefing and thirteen days prior to the date scheduled for oral argument, Clark County Deputy Public Defender Stephen Dahl moved for leave to file a "supplemental brief" addressing the applicability of the "recently decided" opinion of Cage v. Louisiana, _____ U.S. _____, 111 S.Ct. 328 (1990), to this matter. We note, significantly, that the *Cage* decision was issued on November 13, 1990, and that attorney Dahl, in the matter of Canape v. State, Supreme Court Docket No. 20461, similarly moved for leave to file a supplemental brief raising the identical issue on February 12, 1991. Attorney Dahl offered no explanation, however, why he waited in the instant appeal until only thirteen days prior to the date set for oral argument to move for leave to file a supplemental brief.

Most capital case appeals in Nevada are handled through the public defender system. Having reviewed the chronology of almost all capital cases since 1979, it seems evident that the system is flawed. In the case of Robert Ybarra, who brutally raped a young girl in White Pine County before pouring gas on and igniting her, 533 days elapsed before the trial record was even filed in our court. Thereafter, the public defender took 300 days to file the opening brief. In the Priscilla Ford case, where defendant was convicted of killing six people on a busy Reno sidewalk on Thanksgiving Day, 1980, it took two years for the trial record to be filed with our court. Two more years passed before the opening brief was filed by the public defender's office. Although these are two of the more egregious cases, delays abound in nearly every case. If the criminal justice system in capital cases is to reflect the will of our citizens, to provide a fair trial without seemingly eternal delays, our court must exercise its supervisory powers and require that lawyers, who are officers of the court, diligently discharge obligations in capital cases. While the majority may find the performance of the Clark County Public Defender's office to be tolerable in this case, I do not and would favor imposition of sanctions.

If the present delays, which seem almost endemic, continue, the Legislature, which is justifiably concerned, may want to consider whether public accountability would be improved by replacing the present system of appointing public defenders with an elective process. Accordingly, I would favor the imposition of suitable sanctions.